Case 10-00301   Document 509   Filed in TXSB on 08/08/11   Page 1 of 13



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
08/09/2011

| | | |
|---|---|---|
| **Dennis Faulkner, Plaintiff,** | § § § | |
| v. | § § | Miscellaneous Proceeding 10-301 |
| **Gary Kornman, et al, Defendants.** | § § | |

## MEMORANDUM OPINION

### Overview Of The Present Dispute

This opinion concerns a postjudgment discovery dispute. Kornman ran a complex web of businesses. His management of those businesses resulted in a fraud judgment of more than $45 million issued by the United States Bankruptcy Court for the Northern District of Texas in favor of Dennis Faulkner. Faulkner sought to have the judgment enforced in this Court. As part of the enforcement of the judgment, Mims was appointed as a receiver.

The postjudgment enforcement involved an effort by Faulkner to require Kornman to turn over millions of pages of documents. This Court ordered that the documents must be provided.

For many years, both before and after the judgment, Kornman relied on Vickie Walker to operate the administrative side of his complex businesses. Initially, Kornman and Walker argued that compliance with the Court's order was physically impossible. Kornman and Walker described a situation in which the millions of pages were located in boxes spread through a series of storage warehouses. According to Kornman and Walker, only Walker could locate the documents and they were physically difficult to retrieve. The process described to the Court involved using ladders and locating boxes on high shelves in many locations with little light and no help.

1

To "test" this impossibility scenario, the Court ordered that Faulkner and Mims identify 10 discrete categories of documents to be produced, thereby limiting the production to an amount that could be produced within a few weeks. In addition, Faulkner and Mims were to provide an aide to assist Walker with the allegedly laborious task of climbing and sorting through the boxes to locate the documents.

Walker was able to locate virtually all of the documents. However, the documents were not located in the warehouses or with the assistance of the aide. Instead, over just a few hours, Walker printed copies of the requested documents off of her personal computer. The entire scenario of impossibility was thus, by Walker's conduct, proven a sham. The dates and details of the foregoing are set forth below.

**Detailed Factual Background**

Faulkner filed a Certification of Judgment in this Court on March 9, 2010. On September 16, 2010, this Court ordered Defendants,[1] their "respective agents, employees, officers, members, partners and *all persons subject to their control, including Vickie Walker* [to] immediately turnover to the Receiver all property, and all documents and records evidencing such property . . . which is subject to the control of one or more Defendant." (ECF Doc. 165 at 1) (emphasis added) (hereinafter "Original Turnover Order"). In addition, this Court ordered Defendants to "reasonably cooperate in all efforts by the Receiver . . . to locate . . . property subject to th[e Original Turnover Order]." (*Id.*).

In the November 4, 2010 Order Commanding Vickie Walker to Produce Documents (hereinafter "Walker Production Order"), this Court stated "based on the testimony and evidence

---

[1] The Order defined the term "Defendants" to include Gary Kornman, Steadfast Investments, L.P., GMK Family Holdings, L.L.C., Tikchick Investment Partnership, L.P., Ettman Family Trust I, Strategic Leasing, L.P., Vehicle Leasing, L.L.C., Executive Air Crews, L.L.C., Executive Aircraft Management, L.L.C., Valiant Leasing, L.L.C., The Heritage Organization Agency, Inc., Heritage Properties, L.L.C., and Financial Marketing Services, Inc.

previously introduced, [this Court finds] that Vickie Walker is an agent of the Judgment Debtors with the capability to comply with the terms of the [Original Turnover Order] with respect to the matters addressed in the first paragraph of this order." (ECF Doc. 237 at 1).

Kornman and Walker did not reasonably cooperate with the Original Turnover Order. Faulkner filed his Expedited Motion to Compel on November 30, 2010. (ECF Doc. 268). As a defense, Kornman and Walker argued that Mims did not follow the Federal Rules of Civil Procedure ("FRCP") and therefore the requests were inappropriate. (ECF Doc. 301 at 2). In its ruling, this Court reinforced what was already clear: "Nothing in the Turnover Order requires the Receiver's compliance with the [FRCP] when the Receiver requests documents in furtherance of the Judgment Debtors' reasonable cooperation obligation." (ECF Doc. 326 at 2).

This Court found Walker in contempt for refusing to comply with the November 4, 2010 Order on December 2, 2010. (ECF Doc. 292 at 60). This Court found Walker able but unwilling to comply. (*Id.* at 61) ("[T]here's no question . . . that she has the ability to locate and to produce the documents . . . . It can happen."). The Court found Walker and Kornman were still working together to prevent enforcement of the judgment. (*Id.*) ("[Walker] and Mr. Kornman are working together to stop Mr. Faulkner and stop Mr. Mims from getting access to the documents that they need in order to collect the judgment."). This Court imposed daily, coercive sanctions beginning December 2, 2010. On December 30, 2010, the Judgment Debtors filed a Motion to Determine Compliance, arguing Walker was in compliance as of December 4, 2010. (ECF Doc. 319). Walker later filed a similar Motion. (ECF Doc. 335).

In the December 2, 2010 order, this Court set a deadline for compliance by requiring the Judgment Debtors to "provide to the Receiver all documents and information referenced in the Trustee's Motion to Compel *no later than 12:00 pm on January 12, 2011*." (ECF Doc. 326 at 2)

3

(emphasis in original).  This was also the date by which the Court required turnover of the Melvin Kornman Trust Agreement. (ECF Doc. 327).  On January 13, 2011, Kornman filed a Notice of Compliance. (ECF Doc. 358).  Kornman argued that belatedly making documents available for copy, in addition to an allegedly diligent but fruitless search for the Melvin Kornman Trust Agreement, constituted compliance. (*Id.* at 1-2).  Faulkner disagreed and filed his second Motion for Contempt against Mr. Kornman.[2]  (ECF Doc. 360).

This Court held hearings related to the Motion for Contempt against Kornman on four occasions between January 19 and February 16, 2011.  Kornman and Walker presented evidence of impossibility.  This Court found "there is strong evidence that full compliance with our order was . . . 'extremely difficult and maybe impossible,' maybe sufficiently impossible under the [caselaw]." (ECF Doc. 475 at 131).  Although "the impossibility was created by the parties who were to respond," it "was created by them prior to the date on which we issued our order, which is an unusual-impossibility kind of an issue." (*Id.*).  The parties prepared briefs on the issue of impossibility in preparation for the February 16, 2011 hearing.

Based on Walker's and Kornman's representations, this Court implemented a new mechanism for document production.[3]  This Court required Faulkner and Mims to "provide ten discrete requests to Mr. Kornman and Ms. Walker together." (ECF Doc. 471 at 52).  This Court indicated noncompliance would be strong evidence of contempt. (*Id.* at 54).  This Court took

---

[2] Faulkner's first Motion for Contempt was part of a larger motion filed on December 20, 2010. (ECF Doc. 293).  In addition, Faulkner had previously filed another Motion for Contempt against Mr. Kornman. (ECF Doc. 289).  That Motion for Contempt related to failing to disclose assets and spending more per month than the Court allowed, not for failure to turnover documents. (*Id.*).

[3] During the recent June 14, 2011 hearing, there appeared to be confusion regarding the scope of this mechanism.  This Court never meant for the new mechanism to impede Faulkner's efforts to recover on the judgment.  Indeed, the order stated "[n]othing in this order excuses Walker or Kornman from complying with this Court's previous orders." (ECF Doc. 418).  The Court's intention was to test Defendants' impossibility argument by having them produce a small number of categories of documents, instead of everything at once.

4

"both motions [for sanctions] under advisement and le[ft] the evidentiary record open." (*Id.* at 52).[4]

The parties also discussed turnover of Walker's computer at the February 16, 2011 hearing. At one point during the hearing this Court indicated the imaged hard drive would need to be included as one of the ten discrete requests. (*Id.* at 55) ("One of [Mr. Bracken's] discrete requests can be a copy of [Walker's] hard drive). At other points, the Court indicated the hard drive was separate. (*Id.* at 58) ("You send ten discrete requests. In addition to the ten discrete requests, we're going to image the hard drive."). Upon review of the transcript, the majority of the statements from the hearing indicate the computer was to be separate from the discrete requests. Nevertheless, the issues regarding the hard drive were not sufficiently clear to sustain a contempt finding if Walker had failed to turn over the hard drive.

Faulkner's first submission of ten requests did not follow this Court's instructions. The tenth "discrete" request asked for "[a]ll documents referable to any entity currently owned by Jeff Mims, Receiver." (ECF Doc. 417 at 3). This type of overly broad request was precisely what the Court was trying to avoid. Accordingly, the Court did not order compliance with the first submission. Faulkner amended his request and the Court issued an order commanding the turnover of the requested documents. (ECF Doc. 419). After considering Kornman's objections, the Court issued a Document Production Order on March 8, 2011. (ECF Doc. 427). The order did not reference Walker's computer. (*Id.*). The Court ordered Kornman and Walker to comply by March 30, 2011, and for all parties to file status reports on April 6, 2011. (*Id.*).

Walker's sanctions continued to accrue as this Court considered the merits of the motions to deem Walker in compliance, filed in late 2010. Meanwhile, Faulkner submitted a Motion to Enforce the Sanctions Order and Application for Writ of Garnishment against Walker on

---

[4] Much of the testimony during these hearings related to Walker.

5

February 24, 2011. (ECF Doc. 421). This Court set a hearing for March 30, 2011, the deadline for Walker to comply with the March 8 Document Production Order. At the hearing, Walker's counsel represented that the computer would be turned over by 5:00 pm that day. (ECF Doc. 482 at 9). Relying on these representations, this Court denied Faulkner's Motion without prejudice. (ECF Doc. 421 at 8). Walker did not turnover the computer by 5:00 pm on March 30. In response, Faulkner moved for reconsideration of the motion, (ECF Doc. 431), which the Court granted. (ECF Doc. 434). The Court was subsequently advised by counsel that the computer was not turned over because Kornman had threatened Walker with a lawsuit if she provided the computer to Faulkner and Mims.

The testimony at the subsequent hearing undermined the defense of impossibility. The impossibility defense rested upon the fact that the documents were scattered amongst various warehouses in boxes, only a portion of which were included in an index. This Court was concerned that it would be essentially impossible for Walker, the only person who understands the entire system, to manually retrieve all responsive documents within the time allotted.

However, the Court now concludes that Walker's manual document retrieval was unnecessary. At the hearing on December 2, 2010, in response to a question by this Court as to what should be done regarding her failure to comply, Walker responded: "I don't know what to tell you, Your Honor. I've done everything I can do. I don't know what else I can do. I can't manufacture things. I can't – I can't get stuff or give them stuff I don't have." (ECF Doc. 292 at 59). This statement was in fact the exact opposite of the truth. Walker could have satisfied many of the requested items by doing nothing more than pressing "Print." Total compliance may not have been possible, but "it was within her ability to have greater compliance [with the Original Turnover Order]." (ECF Doc. April 11 at 90).

Walker's eventual compliance with the more limited production order did not involve the manual retrieval of any documents. Instead, Walker located the documents on her computer and printed them. The impossibility defense was premised on the requirement of a manual search; her actual compliance was by a computer search. The Court is clearly convinced that Walker failed to comply with the Court's prior orders and that her impossibility defense was fabricated.

The Court amended the original order finding Walker in contempt, and granted Faulkner's Motion for Orders to Enforce Sanctions Orders and Application for Writ of Garnishment. (ECF Doc. 443 at 1).

Walker eventually turned the computer over.[5] On April 20, 2011, Faulkner filed his Omnibus Motion for Contempt and Sanctions against Kornman, combining allegations from previous motions with events subsequent to the issuance of the March 8 Production Order. (ECF Doc. 451). The Court asked for briefs on criminal contempt as well as whether new evidence existed regarding Kornman's capacity to comply with this Court's prior orders (i.e., what remained of Kornman's impossibility defense). (ECF Doc. 454).

On May 12, 2011, Faulkner filed another Motion to Compel against Kornman. (ECF Doc. 476). A hearing was held on June 14, 2011. On June 23, 2011, Faulkner submitted a Proposed Order regarding the set of discrete production requests from the June 14, 2011 hearing. (ECF Doc. 496) This Court signed that Order on July 6, 2011. (ECF Doc. 498).

## Civil Contempt

This Court finds Kornman in contempt of court from the date of the Original Turnover Order until Walker turned over the computer. Due to the unusual facts of the case, Kornman's impossibility defense returned after turnover of the computer. Accordingly, this Court finds Kornman's civil contempt terminated when Walker's computer was turned over.

---

[5] The record does not make clear the exact date.

7

**Kornman's Previous Actions and Inactions Constitute Contempt**

It is now clear this Court's original findings were correct: "[Walker] and Mr. Kornman are working together to stop Mr. Faulkner and stop Mr. Mims from getting access to the document that they need in order to collect the judgment." (ECF Doc. 292 at 61). Kornman never complied fully with the Original Turnover Order.

The "movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence: (1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order." *Petroleos Mexicanos v. Crawford Enter.*, 826 F.2d 392, 401 (5th Cir. 1987) (citing *McComb v. Jacksonvill Paper Co.*, 336 U.S. 187, 191 (1949)). After such a showing, "the respondent can defend against it by showing a present inability to comply with the subpoena or order." *Id.* (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)). In raising this defense, the defendant has the burden of production. *Rylander*, 460 U.S. at 757.

Faulkner established a prima facie case of civil contempt by clear and convincing evidence. An order was in effect and it required Kornman to *immediately* turn over responsive documents subject to his control and to reasonably cooperate in all efforts by Mims to obtain such documents. (ECF Doc. 165). This court finds by clear and convincing evidence that Kornman did not immediately turnover responsive documents subject to his control.[6]

The testimony establishes that Walker never refused a request from Kornman to produce a document, (ECF Doc. 483 at 127), and was prepared to do what was necessary to produce the needed documents. (ECF Doc. 475 at 104-05). Kornman was capable of causing these documents to be produced merely by requesting that Walker do so. Instead of asking Walker to

---

[6] This Court also finds by clear and convincing evidence that Kornman did not reasonably cooperate with Mims's efforts to obtain the documents.

provide the documents, Kornman's actions were intended to preclude Walker's cooperation. Kornman therefore failed to comply with this Court's order. The only question remaining is whether a defense of impossibility existed.

Kornman fails to meet the burden of production for impossibility. The most probative evidence comes from the April 11, 2001 hearing. Walker testified she was capable of effortlessly producing many of the required documents back in September:

| | |
|---|---|
| Mr. Bracken : | "Okay. And for how long have you had the information on the files that was then existing that you could have printed out the P and L's, the general ledgers and the balance sheets?" |
| Ms. Walker: | "Well I mean, I've – they've existed for quite some time. I mean, they've existed all along. |
| Mr. Bracken: | "They've existed since – all through calendar year 2011, true?" |
| Ms. Walker: | "Well –" |
| Mr. Bracken: | "That information has been available to you, where if you so chose, you could have printed it you and generated the documents that you did on March 30th, 2011, is that true?" |
| Ms. Walker: | "I suppose." |
| Mr. Bracken: | "Okay. Back in September of 2010, did you have the same information regarding these entities that you produced on March 30th, 2011 at your disposal?" |
| Ms. Walker: | "In September 2010?" |
| Mr. Bracken: | "Yes, ma'am." |
| Ms. Walker: | "Yes, 'cause in September 2010 I still worked for the 11 partners and still had access to the files that I have." |

(Transcript of the April 11, 2011 hearing; at 30).

Kornman's impossibility defense fails.[7]

Even if this Court believed Kornman attempted in good faith to comply with the various turnover orders, but honestly believed compliance impossible, this would not be enough to

---

[7] Even if Kornman abided by this Court's March 8 Document Production Order, he still did not comply with the Original Turnover Order. The Court initiated the March 8 Document Production Order to test Kornman and Walker's impossibility defense. It was not Kornman and Walker's failure to abide by the March 8 Document Production Order that destroyed the impossibility defense; it was the revelation of previously unknown facts, that destroyed the defense. This revealed the March 8 Document Production Order to be the result of the charade orchestrated by Kornman and Walker in order to not comply with the Original Turnover Order. Kornman can not argue that supposed compliance with the March 8 Document Production Order, an order which only existed due to their dishonest obstructionist behavior, excuses the continuous noncompliance with the Original Turnover Order.

9

prevent a finding of civil contempt. In the Fifth Circuit, "good faith is not a defense to a finding of civil contempt." *United States v. City of Jackson*, 359 F.3d 727, 731 (5th Cir. 2004). Notwithstanding theoretical good faith, Kornman's failure resulted in the waste of this Court's time and of Faulkner's time and money. Compensatory civil sanctions are appropriate in this situation under Fifth Circuit case law, even for a defendant acting in good faith.

Of course, Kornman did not act in good faith. The record is replete with evidence of Kornman's bad-faith actions. The following is a nonexhaustive list of evidence of Kornman's bad faith:[8]

1. Directing Walker not to turnover the computer per this Court's orders, even after Walker's attorney assured the Court that the computer would be turned over. (Transcript of the April 11, 2011, at 8.).

2. Providing access to documents in an inaccessible form instead of turning them over to the Receiver by January 12, 2011.

3. Incomplete disclosure of assets. (ECF Doc. 483 at 103-04).

4. Possessing responsive documents on December 13th, 2010 but waiting to turn them over until a Court hearing on January 19th, 2011 (i.e. seven days after this Court's deadline, and weeks later than anything resembling "reasonable cooperation"). (ECF Doc. 374 at 20)

**Impossibility Defense Returns**

Nevertheless, Kornman's impossibility defense has been revived following turnover of the computer.

This Court ruled against Walker on the issue of impossibility because of failure to comply via the alternative method of the computer. Without the aid of the computer, Walker's compliance with the more extensive original document request would be impossible due to the unique filing system. Walker turned over the computer. The Court finds that Walker (and thus

---

[8] Not every one of the following is necessarily sufficient for a finding of contempt.

Kornman) will be unable to comply with further discovery requests unless limited in size and scope (i.e., following the "ten discrete requests" pattern).

Of course, the duty of cooperation includes the duty to assist Faulkner and Mims to locate documents on the computer. To date, there is no evidence of a failure to render such assistance after the date on which the computer was provided.

Kornman is unable to retrieve documents in the manner that Walker is. Kornman is unfamiliar with the filing system and incapable of retrieving documents from storage. Neither party produced evidence that Kornman's ability to comply in this respect has changed. Kornman relies on Walker for compliance *as it relates to retrieving documents from storage*. Kornman's impossibility defense for this aspect of compliance returned once Walker turned over the computer.

**Compensatory Civil Sanctions to be Awarded**

Sanctions are civil in nature if the purpose is to "coerce compliance with a court order or to compensate another party for the contemnor's violation." *Placid Ref. Co. v. Terrebonne Fuel & Lube (In re Terrebonne Fuel & Lube)*, 108 F.3d 609, 612 (5th Cir. 1997) (citing *Lamar Financial Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990)). Coercive sanctions are inappropriate because incarcerating Kornman will not induce compliance as it relates to retrieving documents from storage. Kornman failed to comply. This caused Faulkner and Mims to expend money to enforce compliance. Faulkner and Mims should be compensated.[9]

### Criminal Contempt

Kornman may only be incarcerated for his conduct through a criminal contempt finding. This is because the purpose would be neither coercive nor compensatory, but would instead be

---

[9] Another judgment against Kornman's assets may seem useless, but exempt assets might be used to pay compensatory civil sanctions. *See generally S.E.C. v. AMX, Intl., Inc.*, 7 F.3d 71 (5th Cir.) (holding that a disgorgement order is not a "debt" for purposes of Debt Collection Act).

"to punish the party whose conduct is in question or to vindicate the authority of the court," which qualifies as criminal contempt. *Crowe v. Smith*, 151 F.3d 217, 229 (5th Cir. 1998).

This Court asked the parties to brief issues regarding criminal contempt and considered writing a Report and Recommendation for the District Court. Upon further review of the record, this Court will not do so.

The record overwhelmingly indicates the computer was to be separate from the discrete production requests. However, there is enough ambiguity to convince this Court that the burden of proof for criminal contempt cannot be met. The transcript from the February 16, 2011 hearing is inconsistent. There is also ambiguity surrounding the March 8, 2011 Document Production Order. It is titled "Document Production Order" and so should be construed as only indicating which *documents* needed to be produced per the six discrete requests submitted by Faulkner (i.e., the absence of a reference to the computer did not indicate that the computer need not be produced). However, the Order does relate to the discussions from the February 16, 2011 hearing, and to Faulkner's production requests, which did include a request to this Court for turnover of the computer.

This Court finds Kornman's attempted justifications to be convenient and self-serving. Nevertheless, a Report and Recommendation for criminal contempt would be inappropriate.**Further Document Turnover**The parties are to continue to follow the mechanism set forth at the February 16, 2011 hearing and which is exemplified by the March 8, 2011 Document Production Order (i.e., Faulkner will submit sets of "ten discrete categories" of documents for production).

**Faulkner and Mims not Precluded from Enforcing the Judgment**

Nothing in this process is intended to impede the enforcement of the judgment.

**New Discovery Mechanism to be Continued for the Foreseeable Future**

There have only been two rounds of these discrete production requests, one of which resulted in the March 8, 2011 Document Production Order, and one incorporated from Faulkner's exhibits at the June 14, 2011 hearing.

Faulkner may continue to present discrete categories of document requests for this Court's approval. If an order is then issued, Kornman will be required to comply to the extent possible. If not, civil and possibly criminal sanctions may result.

**Hearing On Compensatory Sanctions**

There must be a hearing to determine the amount of compensatory sanctions to be assessed against Kornman. The hearing will be on September 13th, 2011 at 10:00 AM.

### Conclusion

Kornman was in civil contempt of court from the date of the Original Turnover Order until Walker turned over the computer. Compensatory sanctions are appropriate.

SIGNED **August 8, 2011.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE