

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
03/01/2012

| | | |
|---|---|---|
| **Dennis Faulkner, Plaintiff,** | § § § | |
| v. | § | Miscellaneous Proceeding 10-301 |
| | § § | |
| **Gary Kornman, et al, Defendants.** | § | |

## MEMORANDUM OPINION

Walker requests the Court modify its April 13, 2011 Amended Order Finding Vickie Walker in Contempt and for Sanctions, (ECF No. 443). As a threshold question, the Court must determine whether the April 13, 2011 order was an interlocutory or a final order.

The Court rules that the April 13, 2011 order was final order. Moreover, if the Court has the power to modify its order, it declines to do so.

### Factual Background

A more detailed factual background of this post-judgment discovery dispute may be found in the Court's August 8, 2011 Memorandum Opinion. (ECF No. 509).

On November 4, 2010, the Court issued an Order Commanding Vickie Walker to Produce Documents. (ECF No. 237). Although Walker was not a judgment debtor, the Court had previously found "that Vickie Walker is an agent of the Judgment Debtors with the capability to comply with the terms of the [Original Turnover Order] with respect to the matters addressed in the first paragraph of this order." (ECF No. 237 at 1).

On December 2, 2010, the Court found Vickie Walker in civil contempt for refusing to comply with the November 4, 2010 Order. (ECF No. 237; No. 292). The Court imposed daily coercive sanctions to persuade Walker to comply. (ECF No. 279; ECF No. 509 at 3). The December 2, 2010 Order was amended slightly on January 7, 2011. (ECF No. 348).

On December 30, 2010, the Judgment Debtors filed a Motion to Determine Compliance, arguing Walker was in compliance with this Court's Order as of December 4, 2010. (ECF No. 319). Walker later filed a similar motion. (ECF No. 335). A hearing was set to determine whether Walker had in fact purged herself of contempt.

On four occasions between January 19, 2011 and February 16, 2011, the Court held hearings on various contempt motions, with the testimony often focusing on the issue of impossibility.[1] Walker's daily sanctions continued to accrue while the Court took the issue under consideration.[2] Meanwhile, on February 24, 2011, Faulkner (the Trustee) submitted a Motion for Orders to Enforce [the December 2, 2010/ January 7, 2011] Sanctions Orders and Application for Writ of Garnishment against Walker. (ECF No. 421). The Court initially denied Faulkner's Motion, relying on an assurance by Walker's counsel that Walker would turnover a computer containing relevant discoverable documents. (ECF No. 482 at 9). When Walker and Walker's counsel did not perform, Faulkner filed a Motion to Reconsider. (ECF No. 431). Testimony at the subsequent hearing indicated that Walker's impossibility defense was a sham.

As a result, the Court issued its April 13, 2011 Amended Order Finding Vickie Walker in Contempt and for Sanctions, (ECF No. 443; hereinafter "Amended Sanctions Order"), which is the subject of this Memorandum Opinion. The Amended Sanctions Order did the following:

(1) rejected Walker's impossibility defense and found Walker in civil contempt from December 2, 2010 through at least April 12, 2011;

---

[1] Faulkner (the Trustee) had also filed contempt motions against Gary Kornman. (ECF No. 360). As the Court had already found Walker in civil contempt and imposed coercive sanctions, Walker's impossibility defense was that she purged herself of contempt by complying with the November 4, 2010 Order to the extent possible. Kornman's impossibility defense was an attempt to avoid the imposition of sanctions against him. The Court was considering the contempt motions concurrently. Walker's, as well as Kornman's, impossibility defense proved to be a sham. (ECF No. 434; ECF No. 509).

[2] Coercive sanctions would only accrue if Walker had not purged herself of contempt. That is, if on March 15, 2011, this Court decided Walker had purged herself of contempt as of December 4, 2010 (the date argued for in the motions to deem Walker in compliance) the coercive sanctions would not have accrued after December 4, 2010.

(2) denied both Vickie Walker's and the Judgment Debtors' Motions to Deem Vickie Walker in Compliance[3];

(3) granted Faulkner's Motion for Orders to Enforce Sanctions Orders and Application for Writ of Garnishment;

(4) ordered Walker to pay Faulkner $126,750.00—the amount of coercive sanctions which accrued from December 2, 2010 through April 12, 2011;

(5) ordered that Morgan Keegan & Company, Inc. was authorized and directed to liquidate Ms. Walker's non-cash assets in any non-retirement account(s) and tender all assets (including cash) from such non-retirement account(s) up to $126,750.00 to Dennis S. Faulkner, Trustee, c/o his attorneys of record;

(6) advised Walker that, in addition to the liquidated amount of $126,750.00 she owed as of April 12, 2011, daily coercive sanctions of $1,000.00 would continue to accrue until full compliance.

(ECF No. 443). The Amended Sanctions Order was not appealed.

The Amended Sanctions Order precipitated what Walker now alleges was a change of course by her. Shortly after entry of the Amended Sanctions Order, Ms. Walker retained new counsel.[4] (ECF No. 538). Walker alleges that "within a week after [new counsel] was employed, well before [Walker] filed for bankruptcy or asked anything of the Trustee, as a show of good faith, Ms. Walker *voluntarily* turned over the [computer], resigned all positions of any kind with the Judgment Debtors, and informed Mr. Kornman that she would no longer willingly assist him in any matters." (ECF No. 538 at 6) (emphasis in original). Walker and the Trustee entered into a Forbearance and Cooperation Agreement with the Trustee on May 12, 2011. (ECF No. 538 at 6). Whether Walker fully cooperated thereafter is in dispute, but nevertheless the

---

[3] After hearing evidence on the issue of impossibility, the Court took the motions under advisement—even introducing an alternative discovery mechanism to test the impossibility defense. Once the impossibility defense proved to be a sham, it was clear that Walker was still noncompliant and had not purged herself of contempt. The Amended Sanctions Order of April 13, 2011 stated explicitly that Walker was still not in compliance, thereby denying both motions to deem Walker compliant. (ECF No. 443)

[4] Walker now alleges misconduct by prior counsel due to a conflict of interest. She alleges that she was given advice which was in the best interest of Gary Kornman—not hers. (ECF No. 538).

evidence indicates the events of April 2011 (surrounding the turnover of the computer) represent a turning point.

Walker argues that she purged herself of contempt after turnover of the computer in early April 2011. (ECF No. 592 at 2). Walker claims that "[after April 2011] the Trustee has never identified even a single piece of paper that he claims Ms. Walker has failed to produce." (ECF No. 592 at 2). Whether Walker purged herself of contempt in April 2011 is not the subject of this Memorandum Opinion. As discussed at the February 16, 2012 hearing, the Court will take that issue under consideration after Walker files a new motion to be deemed in compliance.

Walker alleges she attempted to settle with the Trustee, to no avail. (ECF No. 538 at 7).

Finally, Walker advances new arguments in an attempt to reduce or eliminate the $126,750.00 in coercive, daily sanctions liquidated by the Amended Sanctions Order. As an example, under the mistaken belief that her sanctions were compensatory instead of coercive, Walker requested that the Court reconsider the propriety of the award, as it allows the Trustee "recover 200% of his cost and fees." (ECF No. 538 at 12).[5] Similarly, Walker asked the Court to consider lessening the $126,750.00 in sanctions accrued through April 12, 2011 due to Walker's former counsel's alleged conflict of interest. Walker also made additional arguments which need not be listed here.

Walker and Faulkner agree that whether the Amended Sanctions Order was an interlocutory or a final order is a threshold question that impacts the outcome of these new legal arguments. The Court will now address this question.

---

[5] The theory appears to be that, because Kornman was ordered to pay $192,000.00 in compensatory sanctions to the Trustee, Walker should not also be forced to pay compensatory sanctions because the Trustee would be recovering twice. Again, the Court imposed coercive sanctions against Walker.

## ANALYSIS

**Which Law Applies?**

Walker argues that "[a]s a collection matter adjunct to an adversary proceeding, there appears no doubt that Texas law applies." (ECF No. 572 at 1). The Court disagrees. The finality of a contempt order in a bankruptcy case is a question of federal law. *See United States Abatement Corp. v. Mobil Exploration & Producing U.S., Inc. (In re United States Abatement Corp.)*, 39 F.3d 563 (5th Cir. 1994).

**Finality [Application of the *Petroleos Mexicanos* Test]**

It is well-settled "that a civil contempt order is not 'final' for purposes of appeal unless two actions occur: (1) a finding of contempt is issued; and (2) an appropriate sanction is imposed." *In re United States Abatement Corp.*, 39 F.3d 563 (citing *Petroleos Mexicanos v. Crawford Ent., Inc.*, 826 F.2d 392, 398 (5th Cir. 1987)).

Under this test, the Amended Sanctions Order was a final order.[6] The Court, rejecting Walker's impossibility defense and professed compliance, found her in civil contempt from December 2, 2010 through at least April 12, 2011. (ECF No. 443 at 1). As a sanction for this period of contempt, the Court ordered Walker to pay $126,750.00—the amount of accrued coercive sanctions from December 2, 2010 until April 12, 2011. Furthermore, the Amended Sanctions Order specifically authorized and directed Morgan Keegan & Company to liquidate Walker's non-retirement holdings and to pay the money to Faulkner. (ECF No. 443).

The fact that the Amended Sanctions Order also advised Walker that she was still noncompliant, and therefore that coercive sanctions continue to accrue, does not transform the finality of the Amended Sanctions Order.

---

[6] The December 2, 2010 initial sanctions order, amended slightly on January 7, 2011, was also a final order.

The Fifth Circuit decision in *United States v. Brumfield* appears to address this exact issue. 188 F.3d 303 (5th Cir. 1999). In *Brumfield*, a taxpayer in a civil proceeding was held in civil contempt and, as a coercive sanction, incarcerated pending compliance. *Id.* at 304-05.[7] The taxpayer's appeal of the initial contempt order was dismissed for failure to pay the filing fee. *Id.* at 305. Subsequently, on two separate occasions, the taxpayer submitted a motion requesting relief from the sanction (confinement), on the grounds that he had purged himself of contempt. *Id.* at 305. On both occasions the district court entered an order denying the motion,[8] finding the taxpayer still noncompliant and ordering that he remain incarcerated. *Id.* The taxpayer appealed these subsequent orders. *Id.* The government, in response, argued that these subsequent orders were not final, appealable orders. *Id.* at 306. The Fifth Circuit disagreed, finding that an order holding that an individual previously adjudged in contempt has not purged himself of that contempt is itself a final and appealable order. *Id.* at 307.

The Fifth Circuit reasoned that "[t]he January order holding that [the taxpayer] had not purged himself of the previously adjudicated contempt was in essence a new contempt order." *Id.* at 306. Therefore, "because there was a new adjudication of contempt and a new sanction, i.e. continued incarceration, the order is 'final' and a new right to appeal is triggered." *Id.* at 307 (citing *U.S. Abatement Corp*, 39 F.3d at 567).[9]

Like the subsequent orders in *Brumfield*, the Amended Sanctions Order acted as a new adjudication of contempt, rejected Walker's claim that she purged herself in contempt, and imposed a new sanction—continuing daily coercive sanctions.

---

[7] This initial order in *Brumfield* is akin to the December 2, 2010 initial sanctions order in this case, which was amended slightly on January 7, 2011.

[8] These orders in *Brumfield* are akin to this Court's April 13, 2011 Amended Sanctions Order.

[9] This statement implies that the initial contempt in *Brumfield*, analogous to this Court's December 2, 2010 initial sanctions order, was a final, appealable order.

**Discretionary Modification**

The Court need not address whether it has discretionary authority to modify its coercive contempt order. If the Court were to eliminate the coercive sanctions that accrued prior to the April 13, 2011 Order, based on alleged compliance subsequent to the entry of that Order, future coercive sanctions would have no effect on future litigants. The purpose of daily sanctions is to place increasing pressure on a recalcitrant individual to obtain compliance with court orders. Compliance should eliminate future—but not past—coercive sanctions.

The Court recognizes that Walker alleges that she was guided in her conduct by counsel with mixed or adverse loyalty. Although a superficially appealing excuse for Walker's contempt, the argument fails under closer inspection.

Walker appears to argue that her contempt was not intentional—that she wished to abide by this Court's orders all along and that her involvement in this discovery dispute is an unfortunate misunderstanding that has spiraled out of control (in part due to the improper advice she received by former counsel who had a conflict of interest). (ECF No. 538 at 3-5). Walker's attempt to portray herself as a well-intentioned "babe in the woods" is revisionist history. If Walker was manipulated, she was manipulated only in the sense that someone convinced her, for whatever reason (residual loyalty to Kornman, improper belief that she was beyond the Court's reach, etc.), to knowingly and intentionally violate this Court's orders. The idea that Walker actually wanted, and indeed tried, to abide by this Court's orders but was manipulated into unwillingly disobeying them is wholly inconsistent with the record.

The Court acknowledges the possibility that Walker was manipulated and used by individuals who, while purporting to represent her best interests, were in fact representing Kornman's best interests. Manipulated or not, Walker must face the fact that she knowingly and

intentionally did the following: (i) lied to this Court on multiple occasions; (ii) impeded the Trustee's efforts to enforce the judgment; and (iii) obstructed the Trustee's and the Receiver's attempts to obtain documents to which they were entitled. Walker is an intelligent woman. She undoubtedly knew these actions were improper. Walker has no excuse for her contempt.[10]

Furthermore, the Court notes that since at least early January 2011, Walker has had Gary Lyon as her counsel. (ECF No. 339) Lyon remains her counsel in bankruptcy proceedings in the Northern District of Texas. Presumably, Lyon is not the counsel who misguided Walker.

Walker's allegations of improper advice from conflicted counsel appear to be directed at Mr. Lippe and Pronske & Patel. (ECF No. 538 at 3-5). It appears almost all the alleged improper advice was given prior to the December 2, 2010 sanctions order. (ECF No. 538 at 3-5). Walker mentions Lyon (her independent counsel from at least early January 2011) only to say that, during the dispute surrounding turnover of a computer, Lyon believed the computer could not be turned over without a protective order because of confidentiality claims by Pronske & Patel (Kornman's lawyers). (ECF No. 538 at 5). Walker alleges this resulted in the computer being turned over later than it otherwise might have been.

The computer-issue is a red herring. Walker was not sanctioned for failure to turn over the computer. Walker was sanctioned for failure to turn over documents in compliance with this Court's orders. Her defense for the failure to turn over the documents was based on the impossibility of her retrieval of the documents. The impossibility defense failed when Walker printed the documents directly from her computer, demonstrating the ease (rather than the impossibility) with which she could access them.

---

[10] The Court does not address whether she has a cause of action against those individuals whom she alleges gave her improper advice while having a conflict of interest.

If the Court had the discretion to modify the accrued sanctions, it would not exercise it.

## **CONCLUSION**

The Amended Sanctions Order was a final order. It was not timely appealed. The imposition of the $126,750.00 in accrued coercive sanctions is not modified.

SIGNED **March 1, 2012.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE