

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
03/13/2012

| | |
|---|---|
| **Dennis Faulkner, Plaintiff,** § | |
| § | Miscellaneous Proceeding |
| v.   § | 10-301 |
| § | |
| **Gary Kornman, et al, Defendants.** § | |

## MEMORANDUM OPINION

The Court previously ruled that Kornman's exempt assets may be used to satisfy contempt orders issued by this Court. Kornman has asked that the Court reconsider that ruling. The purpose of this Memorandum Opinion is to address in greater detail the Court's reasoning behind the ruling and to deny Kornman's request for reconsideration.

## Factual Background

**First Contempt Order**

An overview of the entire discovery dispute may be found in this Court's August 8, 2011 Memorandum Opinion, (ECF No. 509). The Court found Gary Kornman in civil contempt from September 6, 2010 until early April 2011[1] as a result of Kornman's refusal to obey the "Original Turnover Order." (ECF No. 509 at 13). The Court ordered Kornman to pay compensatory sanctions in the amount of $192,674.26. (ECF No. 531 at 2; hereinafter "First Contempt Order"). The Court stated that the sanctions may be collected from both nonexempt and exempt assets. Kornman has not yet paid any of the sanctions. Kornman did not appeal the First Contempt Order.

---

[1] Due to the unique factual circumstances, once Kornman's agent, Vickie Walker, turned over a computer in early April 2011, Kornman was able to prove his impossibility defense as the evidence showed he was thereafter unable to further comply with the Original Turnover Order. (ECF No. 509 at 10-11).

Kornman did, however, later request a stay of enforcement of the First Contempt Order against his exempt assets. (ECF No. 596). The Court stated it would grant such a stay on the condition that Kornman submit a "bond or other appropriate security" as described in Rule 8005. (ECF No. 600). The security was to be returned if Kornman succeeded on appeal. (ECF No. 600). The Court provided Kornman with three different options for the appropriate security. (ECF No. 600). Kornman chose not to post an appropriate security.

**Second Contempt Order**

On September 2, 2011, the Court issued a Document Production Order, (ECF No. 517), which ordered Kornman and his respective agents to produce a discrete set of documents.[2] On January 6, 2012, the Court found Kornman in civil contempt and imposed daily coercive sanctions. (ECF No. 571). Kornman appealed. (ECF No. 591).

The Court would stay enforcement of the Second Contempt Order on the same condition as the first—the posting of an appropriate security. Coercive daily sanctions continue to accrue. Although this Memorandum Opinion focuses on the liquidated amount of sanctions under the First Contempt Order, the eventual total of accrued daily coercive sanctions may similarly be satisfied with Kornman's exempt assets.

## Analysis

Kornman argues the compensatory sanctions represent a mere money judgment, which must be executed upon in accordance with Rule 69 of the Federal Rules of Civil Procedure. Rule 69 requires that:

---

[2] The Document Production Order was much less broad than the Original Turnover Order. The Document Production Order was introduced as part of the Court's "alternative discovery mechanism" described in the August 9, 2011 Memorandum Opinion. (ECF No. 509). Kornman never argued that it was impossible for him to comply with the Document Production Order. Kornman provided no defense for his noncompliance.

> [t]he procedure on execution [of a money judgment]—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Fed. R. Civ. P. 69(a)(1). Kornman argues that Texas law does not permit enforcement of contempt sanctions against the homestead or exempt property. Kornman argues that this alleged Texas prohibition precludes the use of Rule 69 to seize Kornman's exempt assets. The Court disagrees.[3]

The First Contempt Order is not a mere money judgment. Rule 69 is inapplicable. Kornman's exempt assets may be used to satisfy the First Contempt Order.

### *Hodgson v. Hotard*

The Fifth Circuit case of *Hodgson v. Hotard* is instructive. 436 F.2d 1110 (5th Cir. 1971). In *Hodgson*, the District Court's original decree enjoined Hotard from continuing to withhold statutory wages owed to twelve former employees pursuant to a judgment issued under the Fair Labor Standards Act. When Hotard refused to pay, the Secretary of Labor petitioned for enforcement of the injunctive decree and requested Hotard be adjudged in civil contempt. 436 F.2d at 1112. The District Court dismissed the petition because it believed "a judgment entered pursuant to section 17 of the Fair Labor Standards Act ["FLSA"] is merely a money judgment, which under Florida law is enforceable only by levy or execution against Hotard's property." *Id.* at 1113.

The Fifth Circuit reversed, holding the District Court abused its discretion in finding that a judgment issued under section 17 of the FLSA was merely a money judgment. *Id.* at 1114-15. The Fifth Circuit noted that "[t]he history and purpose of the FLSA . . . [show it] was designed and enacted as a necessary measure to assure the effective and uniform compliance with and

---

[3] The Court does not express an opinion as to whether or not Kornman is correct in the assertion that Texas law does not permit enforcement of contempt sanctions against exempt assets.

adherence to a public policy." 436 F.2d at 1113 (citing *Wirtz v. Jones*, 340 F.2d (5th Cir. 1965)). The Fifth Circuit found the purpose of the injunction was not to collect a judgment, but to correct a continuing offense against the public interest. *Id.* at 1114. This was true even though, as a consequence of its enforcement, money would pass from Hotard to his former employees. *Id.*

*Pierce v. Vision Investments, Inc.*

The Fifth Circuit faced a similar question in *Pierce v. Vision Investments, Inc.*, 779 F.2d 302 (5th Cir. 1986). In *Pierce*, the key issue was whether a consent order entered in a lawsuit brought under the Interstate Land Sales Full Disclosure Act constituted a money judgment or debt. The consent order "permanently enjoined the Kirks [Vision's principals] from engaging in [certain] activities considered unlawful . . . and required monies to be paid by the Kirks to [defrauded former customers]." *Id.* at 304. If the order were a money judgment or debt, the Kirks could not be imprisoned pursuant to a contempt judgment in order to coerce compliance.[4]

The Fifth Circuit held the order was not a mere money judgment or debt. *Pierce*, 779 F.2d 302. Important to the decision was once again the fact that the court orders at issue were designed to protect important public interests, not merely to effect a transfer of money from one party to another. *Id.* at 308.

**First Contempt Order**

Kornman knowingly and deliberately violated the Original Turnover Order[5] for almost eight months. A long, expensive, and ultimately unnecessary legal battle resulted. Kornman was

---

[4] 28 U.S.C. § 2007(a) provided that: "A person shall not be imprisoned for debt on a writ of execution or other process issued from a court of the United States in any State wherein imprisonment for debt has been abolished. All modifications, conditions, and restrictions upon such imprisonment provided by State law shall apply to any writ of execution or process issued from a court of the United States in accordance with the procedure applicable in such State." The Kirks were citizens of Texas, where imprisonment for debt is forbidden by the state Constitution. Tex. Const. art. I, § 18.

[5] Kornman is still currently in violation of the Document Production Order. As stated above, daily coercive sanctions continue to accrue.

unfortunately quite successful at undermining the integrity of this judicial process, while also subjecting his opponents to significant expense.

If recalcitrant litigants may subject their opponents to increased costs and delays with impunity, public confidence in the courts will be eroded.  The public expects that litigants who willfully disregard court orders will not benefit from doing so.  "Courts do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity, with no power in the tribunal to punish the offender."  *Waffenschmidt v. Mackay*, 763 F.2d 711 (5th Cir. 1985) (citing *Berry v. Midtown Service Corp.*, 104 F.2d 107, 110 (2d Cir. 1939)).   It is in the public interest that litigants must abide by court orders and be prevented from abusing the litigation process.

The Fifth Circuit has held that "a bankruptcy court's power to conduct civil contempt proceedings and issue orders in accordance with the outcome of those proceedings lies in 11 U.S.C. § 105."  *Placid Ref. Co. v. Terrebonne Fuel & Lube (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997).  That section provides in pertinent part:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, *taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process*.

11 U.S.C. § 105(a) (emphasis added).  This Court resorted to civil contempt proceedings in order to force compliance with its orders and to prevent Kornman from continuing his abusive litigation tactics.

The First Contempt Order is not a mere money judgment.  Its enforcement, as in *Hodgson*, will result in a transfer of money from Kornman to Faulkner.  This transfer is not the

order's purpose, merely the byproduct. The order's purpose is to correct Kornman's continuing offense against the public interest[6] and prevent his abuse of the litigation process.

The Fifth Circuit has a long line of decisions[7] which distinguish between mere money judgments/debts and court orders, decrees, and injunctions imposed in the public interest. The First Contempt Order corresponds to the latter category. Kornman may not hide behind state law exemptions while brazenly violating this Court's orders.

Korman's exempt assets may be used to satisfy the First Contempt Order; the amounts payable under the Second Contempt Order have not yet been liquidated..

## CONCLUSION

The Court will issue a separate order directing the liquidation of some of Kornman's exempt assets.

SIGNED **March 13, 2012.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

---

[6] Daily sanctions for violation of the Original Turnover Order are no longer accruing because, due to the unique factual circumstances of the case, Kornman demonstrated an inability to comply with the Original Turnover Order once Walker turned the computer over in early April 2011. (ECF No. 509). Kornman's offense against the public interest, however, continues until he purges himself of contempt. Until Kornman pays the compensatory sanctions, he will have been able to flaunt this Court's orders (and subject his opponents to delays and increased expenses) without any adverse consequences.

[7] In addition to the decisions already cited, see *S.E.C. v. Huffman*, 996 F.2d 800 (5th Cir. 1993); *S.E.C. v. AMX, Int'l*, 7 F.3d 71 (5th Cir. 1993); *Wirtz v. Jones*, 340 F.2d 901 (5th Cir. 1965).