

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
03/28/2012

| | |
|---|---|
| **Dennis Faulkner, Plaintiff,** § | |
| § | Miscellaneous Proceeding |
| v. § | 10-301 |
| § | |
| **Gary Kornman, et al, Defendants.** § | |

## MEMORANDUM OPINION

This Memorandum Opinion supports the Court's rulings from the March 7, 2012 hearing. Certain oral findings and conclusions were made on the record on March 7, 2012. This Memorandum Opinion supplements those oral findings and conclusions. To the extent of any conflict, this Memorandum Opinion controls.

## Factual Background

Dennis S. Faulkner, Trustee of the Heritage Creditor's Trust (the "Trustee"), registered in the Southern District of Texas a final judgment issued by the Bankruptcy Court of the Northern District of Texas in Adv. Pro. No. 06-03377-bjh. The matter was referred by the District Court to this Court.

This Court issued an Order for Turnover Relief and Appointment of Receiver ("Original Turnover Order" on September 16, 2010. (ECF No. 165). The Original Turnover Order required Gary M. Kornman, Steadfast Investments, L.P., GMK Family Holdings, L.L.C., Tikchick Investment Partnership, L.P., Ettman Family Trust I, Strategic Leasing, L.P., Vehicle Leasing, L.L.C., Executive Air Crews, L.L.C., Executive Aircraft Management, L.L.C., Valiant Leasing, L.L.C., The Heritage Organization Agency, Inc., Heritage Properties, L.L.C., and Financial Marketing Services, Inc. (collectively, the "Judgment Debtors") to turnover, among

other things, all nonexempt property to Jeff Mims as permanent Receiver (the "Receiver"). (ECF No. 165).

Thereafter, Kornman executed a Conveyance of Interest to the Receiver on behalf of himself and all Judgment Debtors.[1] (ECF No. 537-5). The Conveyance of Interest stated that "each of the Judgment Debtors does hereby turn over, transfer, assign, and convey unto Jeff Mims, the appointed Permanent Receiver, any and all of his or its right, title, and interest in and to any property that are described in the attached Exhibits which were filed by the Judgment Debtors . . . ." (ECF No. 537-5).

In an effort to enforce the registered final judgment, the Trustee identified certain financial accounts, called Flex-Funds, owned by entities who are not Judgment Debtors. Although these entities themselves are not Judgment Debtors, many of the Judgment Debtors owned these entities outright or owned a significant interest in them (and those transferred interests are now owned by the Receiver after the Conveyance). The Receiver's ownership interest in these entities ranges from quite small to 100%. The Trustee filed a Motion to Compel Turnover of the Flex-Funds Accounts owned by these non-Judgment Debtor entities. (ECF No. 537, 634).

A hearing was held on March 7, 2012, at which the Court made several rulings. The Court declined to hold that the Receiver, even if he owned 100% of an entity and had sole control over it, was entitled to use a Flex-Fund Account to satisfy a judgment. That entity, for example, may have creditors who would be first entitled to the Flex-Fund Account. The Court did, however, determine those entities in which the Receiver has a 100% ownership interest and

---

[1] Kornman was the President or Trustee of these Judgment Debtor entities.

those entities over which the Receiver has sole control. A series of rulings were made in open court, mostly without objection from the parties.

## Analysis

Kornman objected to the first three series of rulings by this Court. (ECF No. 666 at 39). These three rulings comprised the first three bullet points of the Order issued after the hearing. (ECF No. 660). Kornman acquiesced to the remaining rulings. (ECF No. 666 at 39). The remaining rulings comprised the last five bullet points of the Order issued after the hearing. (ECF No. 660). This Memorandum Opinion addresses the contested rulings.

**Eagle View Capital Management LLC a/k/a Flagstone Management LLC**

The Court ruled that: (i) the Receiver owns 100% of Eagle View Capital Management LLC ("EVCM LLC"); and (ii) that the Receiver is the sole member and may exercise control of EVCM LLC. Kornman stipulated that the Receiver owns 100% of the membership interest in EVCM LLC.[2] Only the second portion of this ruling is contested.

Prior to the Conveyance of Interest to the Receiver, there were two members of EVCM LLC: (i) Kornman, who owned 95%, and (ii) Eagle View Capital Management, Inc., who was the managing member and owned the remaining 5%. (ECF No. 634-3). These interests were

---

[2] In fact, Kornman stipulated to Mims's 100% ownership interest in all the disputed entities. The transcript reads:

  Mr. Clary: Yeah, I've acknowledge[d] the percentages. I don't have a problem with that, Your Honor.

  Mr. Bracken: So you stipulate that 100 percent of the membership interest in the –

  The Court: The Valiant entities, in Eagle View and in Gallant.

(ECF Doc. 666 at 25). This portion of the transcript does not reflect Mr. Clary's non-verbal assents, but they are noted by the Court. Moreover, those portions of the transcript where the entities are discussed separately indicate that on each occasion Mr. Clary (Kornman's counsel) recognized that Mims owned 100% of the membership interest. (ECF Doc. 666 at 6, 20, 22).

assigned to the Receiver by the Conveyance of Interest.[3] The Receiver, even as an assignee of 100% of the membership interest may not automatically become a member. TEX. BUS. ORG. CODE § 101.108(b)(2)(B). "An assignee of a membership interest in a limited liability company is entitled to become a member of the company on the approval of all of the company's members." TEX. BUS. ORG. CODE § 101.109(b).

Kornman did not merely assign his 95% membership interest in EVCM LLC. Kornman assigned all of his rights as a member of the EVCM LLC. (ECF No. 537-5). That the Texas Business Organizations Code recognizes such a distinction is ascertained from the text of § 101.111(a): "An assignor of a membership interest in a limited liability company continues to be a member of the company and is *entitled to exercise any unassigned rights or powers of a member of the company* until the assignee becomes a member of the company." TEX. BUS. ORG. CODE § 101.111(a) (emphasis added). Kornman assigned all of his rights as a member, including the ability to approve the admission of new members. This is in addition to, and separate from, the assignment of his membership interest.

The only other member was Eagle View Capital Management, Inc. Kornman was the 100% shareholder of this corporation, but assigned all his interest to the Receiver. (ECF No. 537-5). The Receiver, as the 100% shareholder, is entitled to control the actions of the corporation, either directly or through the company's board. As the sole shareholder, the Receiver could declare his control through a shareholders' agreement that "eliminates the board of directors and authorizes the business and affairs of the corporation to be managed, wholly or

---

[3] Kornman's directly held a 95% in EVCM LLC. (ECF No. 537-5 at 12; there listed as Flagstone Management LLC). Kornman was also the 100% shareholder of Eagle View Capital Management, Inc, which owned the remaining 5% of EVCM LLC. Kornman's 100% interest in Eagle View Capital Management, Inc. was assigned to the Receiver in the same Conveyance of Interest. (ECF No. 537-5 at 11).

partly, by one or more of its shareholders . . . ." TEX BUS. ORG. CODE § 21.101(a)(2).[4]  The Receiver may manage the business and affairs of Eagle View Capital Management, Inc.

The Receiver owns 100% of the membership interest in EVCM LLC.  Of the two members of EVCM LLC, one (Kornman) is no longer entitled to object to the admission of the Receiver as a member and his approval need not be sought.  The other member (Eagle View Capital Management, Inc.) is 100% owned by the Receiver, who is entitled to manage its business and affairs.  The Receiver, on behalf of Eagle View Capital Management, Inc., may approve the admission of himself as a member of EVCM LLC.

The Receiver may exercise control over EVCM LLC.  In addition to being its 100% sole owner, the Receiver manages the business and affairs of both of EVCM LLC's members (his own and those of Eagle View Capital Management, Inc.).

The Court's March 7, 2012 Order will be amended to reflect that the Receiver is the "sole owner" rather than the "sole member" of EVCM LLC.  In fact, the Receiver and Eagle View Capital Management, Inc. are both members.

**Various Valiant Investments L.P.'s**

This Court ruled that: (i) the Receiver owns 100% of Valiant Investments 94-1, L.P., Valiant Investments 94-2, L.P., Valiant Investments 95-2, L.P., Valiant Investments 94-3, L.P., Valiant Investments 95-5, L.P., Valiant Investments 94-6, L.P., and Valiant Investments 95-7; L.P.; and (ii) the Receiver is the sole person who controls these limited partnerships.  (ECF No. 660).  Kornman stipulated to the Receiver's 100% ownership interest.  (*See supra* note 2).  Only the latter portion of this second ruling is at issue.

---

[4] Such a shareholder's agreement must be written and made known to the corporation. TEX. BUS. ORG. CODE § 21.101(b)(1)(B).  The Court accepts the substance of these pleadings as constituting such a written agreement. The Court believes that a shareholder's agreement executed by the sole 100% shareholder, which states that this shareholder will manage the corporation instead of the nonexistent board of directors and nonexistent officers, is sufficiently "made known to the corporation" at such a hearing.

These limited partnerships each have the same structure. Prior to the Conveyance of Interest, Kornman Corporation had a 1% ownership interest in each of these limited partnerships and was the general partner. (ECF 634-2). The remaining 99% was owned by the Ettman Family Trust I as a limited partner. (ECF No. 634-2).

Kornman was the 100% shareholder of Kornman Corporation. (ECF 634-2). All of Kornman's interest in Kornman Corporation was assigned to the Receiver in the Conveyance of Interest. (ECF No. 537-5). As with Eagle View Capital Management, Inc., the Receiver may himself manage the business and affairs of Kornman Corporation. (*See supra* note 4 and accompanying text).

The remaining 99% of all of the Valiant Investment L.P.'s was owned by Ettman Family Trust I as a limited partner. (ECF No. 634-2). Ettman Family Trust I is a Judgment Debtor and assigned all its interests in the various Valiant Investment L.P.'s to the Receiver in the Conveyance of Interest. (ECF No. 537-5 at 8). Nevertheless, the Receiver, as assignee of Ettman Family Trust I's limited partnership interest, is not automatically entitled to become a partner. TEX. BUS. ORG. CODE § 153.251(b)(2).

The assignment caused Ettman Family Trust I to cease to be a limited partner as a matter of law. An assignment for the benefit of a creditor is an event of withdrawal. TEX. BUS. ORG. CODE § 152.501(b)(6)(B). "A person ceases to be a partner on the occurrence of an event of withdrawal." TEX. BUS. ORG. CODE § 152.501(a).

These withdrawal provisions are from Chapter 152, which deals with General Partnerships. However, "[e]xcept as provided by [§ 153.003(b)], in a case not provided for by [Chapter 153 – Limited Partnerships] and the other limited partnership provisions, the provisions

of Chapter 152 governing partnerships that are not limited partnerships and the rules of law and equity govern [limited partnerships]." TEX BUS. ORG. CODE § 153.003(a).

Chapter 153 does not have provisions that separately deal with the withdrawal of a limited partner as a matter of law.[5]  There is only a provision which deals with the voluntary withdrawal of a limited partner.  TEX. BUS. ORG. CODE § 153.110.  There is not a superseding provision which deals with withdrawal of a limited partner as a matter of law.  Accordingly, the above portions of Chapter 152 are applicable to limited partnerships. Ettman Family Trust I is no longer a partner of the Valiant Investments L.P.'s.

The Receiver, as an assignee of Ettman Family Trust I's limited partnership interests, may become a limited partner if all partners consent.  TEX. BUS. ORG. CODE § 153.253(a)(2). Prior to the Conveyance of Interest, there was one general partner (Kornman Corporation) and one limited partner (Ettman Family Trust I) for each of the Valiant Investments L.P.  As set forth above, Ettman Family Trust I is no longer a partner.  The Receiver owns and manages the business and affairs of the only remaining partner (Kornman Corporation) and may admit himself as a partner.[6]

The Receiver owns 100% of the membership interest of the Valiant Investments L.P.'s. The Receiver is one of two partners, and he manages the business and affairs of the other partner. The Receiver is the sole person who controls these partnerships.

---

[5] There is a provision dealing with withdrawal of a general partner as a matter of law.  TEX. BUS. ORG. CODE § 153.155.

[6] This analysis differs from that discussed during the hearing.  As set forth above, this Memorandum Opinion controls.

**Gallant Corporation**

This Court's third ruling was that "Mims owned 100% of the stock of Gallant Corporation and may elect all of its directors."

The Court includes this third ruling in the Memorandum Opinion out of an abundance of caution. It is likely that this ruling is not truly contested.[7] If this ruling is still contested, the Court completely fails to understand the argument. A 100% shareholder of a corporation is entitled to elect its directors (TEX. BUS. ORG. CODE § 21.405) or (as set forth above) to control the corporation directly via a shareholders' agreement.

### Conclusion

The Court has issued an amended order.

SIGNED **March 28, 2012.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

---

[7] That Mims owns 100% of the corporate stock is not contested. (*See supra* note 2). As to the other portion of the ruling, at the hearing Clary (Kornman's counsel) stated: "If he's the shareholder, he can certainly – 100 percent shareholder, he can elect the board of directors. That's never been in dispute." (ECF No. 666 at 20). Later in the hearing, however, the transcript read as follows:

> Court: Mr. Clary, I know as to the first three series of rulings I made that you take exception to those.
>
> Clary: That's correct, Your Honor.

(ECF No. 666 a 39).