

ENTERED
10/23/2015

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **DENNIS FAULKNER** § | MISC CASE NO: 10-00301 |
| Plaintiff § | |
| § | |
| VS. § | |
| § | |
| **GARY KORNMAN,** *et al* § | |
| Defendants § | |

## MEMORANDUM OPINION

Dennis Faulkner, Trustee of the Heritage Creditors Trust, and Jeffrey Mims, Receiver of the Heritage Creditors Trust, jointly filed a motion for turnover of assets formerly held in the name of DPK Investments, L.P. (ECF No. 1330). For the reasons set forth in this memorandum opinion, the motion for turnover is denied.

## Background

*DPK Investments*

DPK Investments, L.P. ("DPK Investments") was a Delaware limited partnership. DPK Investments' certification of limited partnership was cancelled by the Delaware Secretary of State on June 1, 2013. (ECF No. 1330-1 at 2). At all relevant times, the sole general partner of DPK Investments was DPK Management Corp. ("DPK Management"), a Texas corporation. DPK Management had a 0.1% ownership interest in DPK Investments.

DPK Investments had the following limited partners, reflected below with their respective interests:

    (1) Millennium 2000 Trust    49.8%
    (2) KKW Millennium 2000 Trust    49.9%
    (3) Dorothy P. Kornman Revocable Trust    0.1%
    (4) Vickie A. Walker    0.1%

In 2011, Vickie A. Walker relinquished all of her interest in DPK Investments. (ECF No. 1393-2 at 3). The Dorothy P. Kornman Revocable Trust terminated on the date of Mrs. Kornman's death. Its assets, including any interest in DPK Investments, were distributed in equal parts to the Millennium 2000 Trust and the KKW Millennium 2000 Trust. (ECF No. 1393-2 at 5). Consequently, the only parties currently holding any interest in DPK Investments are (1) DPK Management, (2) Millennium 2000 Trust, and (3) KKW Millennium 2000 Trust.

DPK Investments owns at least two significant assets: (1) a money market account at Oppenheimer & Co., Inc. which, as of March, 2014, contained approximately $400,000, and (2) a condominium in Fort Lauderdale, Florida with an appraised value of $502,140. (ECF No. 1330-5 at 2; ECF No. 1330-4 at 2).

*DPK Management*

DPK Management is a Texas corporation. Texas Secretary of State records indicate DPK Management forfeited its corporate existence on July 30, 2010. (ECF No. 1330-3 at 2; ECF No. 1393 at 2). It appears forfeiture occurred as a result of failure to pay certain franchise tax liabilities. (*Id.*). On September 16, 2010, this Court ordered Gary Kornman to turn over all of his interest in several entities, including his interest in DPK Management, to Receiver Jeffrey Mims. (ECF No. 165). On October 8, 2010, Gary Kornman made such a conveyance. (ECF No. 293-2 at 1-2, 11). At present, Jeffrey Mims is the sole shareholder of DPK Management, the sole general partner of DPK Investments.

*Millennium Trusts*

The KKW Millennium 2000 Trust and the Millennium 2000 Trust (collectively "Millennium Trusts") were executed on July 2, 2000 by Dorothy P. Kornman.[1] The agreement includes a provision expressing Dorothy Kornman's intent to create trusts in compliance with the statutory requirements of the state of Alaska. (ECF No. 1114-18 at 38). Additionally, the trust agreement contains a choice of law provision designating Alaskan law. (*Id.*). The trust agreement also includes a spendthrift clause, designating all trusts created by the trust agreement as spendthrift trusts. (ECF No. 1114-18 at 21).

Gary M. Kornman was designated Family Trustee and Kay Kornman Weinstein was designated Distribution Trustee. (ECF No. 1114-18 at 2). The primary beneficiary of the Millennium 2000 Trust is Gary Kornman. The primary beneficiary of the KKW Millennium 2000 Trust is the estate of Kay Kornman Weinstein. (ECF No. 1114-18 at 3-4).

## Jurisdiction and Authority

The motion for turnover at issue in this case relates to a proceeding to enforce a judgment. On March 9, 2010, Dennis Faulkner registered a judgment against Gary Kornman that had been issued by the United States Bankruptcy Court for the Northern District of Texas. This Court has held—and has been repeatedly affirmed on appeal—that it has both subject matter jurisdiction and authority to enforce the Northern District judgment. In summary, this Court has "related to" jurisdiction under § 1334 to enforce the registered judgment. "Related to" jurisdiction existed because the registered judgment arose out of the bankruptcy of The Heritage Organization, LLC. The Heritage Organization, LLC case was closed on July 22, 2014. Because

---

[1] The Millennium 2000 Trust and the KKW Millennium 2000 Trust appear to have been executed at the same time and governed by the same trust agreement. (ECF No. 1114-18 at 3) ("Each separate trust established hereunder for the primary benefit of a person shall be known as 'Millennium 2000 Trust for' followed by the name or initials of the primary beneficiary.").

subject matter is determined at the commencement of a suit, the closure of the bankruptcy case did not terminate the subject matter jurisdiction that existed at the commencement of the case. *Faulkner v. Kornman*, 2015 WL 1061736, at *1 (Bankr. S.D. Tex. Mar. 26, 2015). Accordingly, this Court has continued *Stern* authority to enforce the judgment that is the subject of this proceeding. *Id.* at *3.

## Analysis

*DPK Management Lacks Standing to Force Distribution of DPK Investments' Assets*

Delaware state records reflect that DPK Investments' certification of limited partnership was cancelled in 2013 for failure to pay certain taxes. (ECF No. 1330-1 at 2); Del. Code tit. 6 §§ 17-203, 17-1110. However, pursuant to Delaware partnership law and DPK Investments' limited partnership agreement, dissolution of the partnership was triggered well before its certification was cancelled.

Under Delaware law, "[a] limited partnership is dissolved and its affairs shall be wound up on the first to occur of the following: . . . [a]n event of withdrawal of a general partner . . . ." Del. Code tit. 6 § 17-801. If the general partner is a corporation, an event constituting withdrawal includes the revocation of the corporation's charter and the expiration of 90 days without reinstatement of the charter. *Id.* at § 17-402(9). When DPK Management forfeited its charter in July 2010, and 90 days elapsed without its reinstatement, dissolution of DPK Investments L.P. was triggered.

Pursuant to the DPK Investments' limited partnership agreement, dissolution was likely triggered on the date DPK Management's charter was forfeited, 90 days before dissolution would be triggered under Delaware law. (ECF No. 1356-5 at 5) ("The partnership shall be dissolved and liquidated only on the first to occur of the following: . . . the withdrawal . . . of the sole

general partner if the limited partners do not elect to reconstitute the partnership and continue it with a new general partner . . . ."). (ECF No. 1356-5 at 5-6).

If an event triggering dissolution occurs, the limited partnership agreement provides that "the partnership shall be wound up and liquidated as rapidly as circumstances will permit . . . ." In the absence of a general partner, the agreement requires the limited partners appoint a liquidator. (ECF No. 1393-3 at 25-26). The limited partnership agreement further provides that if within 90 days following the date of dissolution a liquidator has not been appointed, "any partner shall have the right to make application to a court of competent jurisdiction to appoint and designate the liquidator. . . ." (*Id.* at 26-27).

It does not appear any effort was made by DPK Investments' limited partners to appoint a liquidator after the dissolution triggering events occurred. Faulkner and Mims, by way of Mims' interest in DPK Management, now seek to pursue dissolution of DPK Investments by requesting the Court appoint a liquidator to distribute the partnership's assets. (ECF No. 1393 at 6).

Faulkner and Mims have suggested the Court characterize their motion for turnover as a motion to appoint a liquidator to liquidate and distribute assets owned by DPK Investments. (ECF No. 1393 at 6). Appointment of a liquidator is consistent with the process for dissolution set forth in DPK Investments' limited partnership agreement. (ECF No. 1393-3 at 26-27).

However, Faulkner and Mims' request presents a standing issue. Specifically, the issue is whether Mims, as the sole shareholder of DPK Management, has standing to request the Court appoint a liquidator to distribute partnership assets pursuant to DPK Investments' limited partnership agreement.

Under Texas law, a corporation may forfeit its corporate privilege to bring and defend suits in Texas courts, state or federal, for failure to satisfy certain tax liabilities. Tex. Tax Code

§§ 171.251-171.252; *In re ABZ Ins. Servs. Inc.*, 245 B.R. 255, 261 (Bankr. N.D. Tex. 2000). Furthermore, in addition to forfeiting litigation privileges, a corporation may also forfeit its charter, by which the State permitted the corporation to conduct business. Tex. Tax Code §§ 171.301-171.302, 171.309-171.310. Such forfeitures do not constitute dissolution, and the corporation maintains legal title to all of its assets until dissolution occurs. *El T. Mexican Restaurants, Inc. v.* Bacon, 921 S.W.2d 247, 253 (Tex. App.—Houston [1st Dist.] 1995, writ denied). Until dissolution occurs, a shareholder only holds beneficial title to corporate assets, and may not bring a corporate cause of action in their own name. *Id.*

Evidence indicates DPK Management has forfeited both its litigation privileges and its right to conduct business. (ECF No. 1330-3 at 2). It does not appear DPK Management has completed dissolution. (*Id.*). Faulkner contends that because Mims as Receiver and sole shareholder of DPK Management "plainly has an ownership interest in the assets of DPK Investments," he should be entitled to seek appointment of a liquidator to distribute the assets of DPK Investments. (ECF No. 1393 at 5). Mims first obtained an interest in DPK Management, Corp. on October 8, 2010. At that time, DPK Management may have had standing to pursue dissolution of DPK Investments. However, as a result of DPK Management's forfeitures, neither Mims, nor DPK Management, have standing to force dissolution of DPK Investments. Should DPK Management's corporate charter be reinstated, it may have standing to pursue dissolution of DPK Investments.

DPK Investments is granted leave to file a renewed motion if its charter is reinstated. However, as set forth below, dissolution may have little practical benefit to Faulkner or Mims, as it would cause assets to be distributed primarily to spendthrift trusts.

*The Millennium Trusts are Valid Trusts under Texas Law*

Though DPK Management cannot pursue dissolution in its current corporate status, the Court will nevertheless analyze the validity of the Millennium Trusts.

Section 8.01 of the trust agreement governing the Millennium Trusts evidences Dorothy P. Kornman's intent to comply with Alaskan trust law. (ECF No. 1114-18 at 38). Alaskan trust law contains statutory requirements that must be satisfied before a settlor may avail herself of the benefit of Alaskan trust law. For example, at least one trustee must be an Alaskan resident who administers trust property in Alaska. Alaska Stat. § 13.36.035(c). If these statutory requirements are not met, any choice of law provision contained in the trust is invalid. *Id.* If the trust's choice of law provision is invalid, the Court must determine which state's law to apply.

Federal and Texas choice of law rules both apply the Restatement (Second) of Conflict of Laws. *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 311 (5th Cir. 2000) ("Texas courts use the ALI Restatement's 'most significant relationship test' for all choice of law cases except those contract cases in which the parties have agreed to a valid choice of law clause."); *In re Cyrus II P'ship*, 413 B.R. 609, 614 (Bankr. S.D. Tex. 2008) (stating that the federal test "is essentially synonymous with the 'most significant relationship' approach adopted by the Restatement (Second) Conflict of Laws.").

The Restatement (Second) of Conflict of Laws states: "An inter vivos trust of interests in movables is valid if valid . . . under the local law of the state designated by the settlor to govern the validity of the trust . . . ." Restatement (Second) of Conflict of Laws § 270(a). If the choice of law designated in the trust agreement is invalid, the governing law is that of the state with which the trust has the most significant relationship. *Id.* at § 270(b). Under the Restatement, this relationship is evaluated using the following factors: (1) the state where the trust instrument was

executed and delivered, (2) the state where the trust assets were then located, (3) the state of the domicile of the settlor at the time, and (4) the state of the domicile of the beneficiaries. *Id.* at § 270 cmt. c.

The Millennium Trusts failed to satisfy the requirements of Alaskan trust law: no Alaskan trustee authorized the trust agreement, no assets of the Trusts were deposited in the state of Alaska, and no part of trust administration occurred in the state of Alaska. *See* Alaska Stat. § 13.36.035(c). Consequently, the provisions of the Millennium Trusts designating Alaskan law as the operative law of the trusts are invalid. (ECF No. 1114-18 at 38). Accordingly, the Court must determine the state with which the Millennium Trusts have the most significant relationship by evaluating the factors set forth in the Restatement.

The Millennium Trusts were executed and delivered in Dallas, Texas. (ECF No. 1114-18 at 2). The Settlor of the Millennium Trusts, Dorothy P. Kornman, was a resident of Florida at the time the Millennium Trusts were executed. (ECF No. 1114-18 at 2). At the time the Millennium 2000 Trust was executed, $10 was deposited as trust assets. It is not clear in which state the funds were deposited. The primary beneficiary of the Millennium 2000 Trust, Gary M. Kornman, was a resident of Dallas, Texas at the time the trust was executed. (ECF No. 1114-18 at 2-3). The primary beneficiary of the KKW Millennium Trust, Kay Kornman Weinstein, was a resident of Annapolis, Maryland at the time the trust was executed. (ECF No. 1114-18 at 2). Notably, the trust agreement appears to consider the possibility that Texas law will apply. Paragraph 6.01 of the trust agreement refers to resolving conflicts between the trust agreement and the Texas Trust Code. (ECF No. 1114-18 at 19).

Taking into consideration the domicile of Gary Kornman, the fact the trusts were executed and delivered in Texas, and the trust agreement's reference to Texas law, the Court

finds that Texas has the most significant relationship with the Millennium Trusts. It is worth noting, however, that application of Florida trust law would likely reach the same result.[2]

*The Millennium Trusts are Valid Spendthrift Trusts*

A spendthrift trust is designed to prevent voluntary or involuntary transfer of interest in trust assets by a beneficiary or, as the case may be, a creditor of a beneficiary. *See* Tex. Prop. Code § 112.035(a). Texas law recognizes the validity of spendthrift trusts to the extent the settlor of the trust is not also a beneficiary. *Id.*; *First Bank and Trust v. Goss*, 553 S.W.2d 93, 95 (Tex. Civ. App.—Houston [1st Dist.] 1976, no writ) (citing *Adams v. Williams*, 248 S.W.673 (Tex. 1923). Spendthrift provisions are enforced not out of consideration for the beneficiary, but for the right of the donor to control his or her gift. *Burns v. Miller, Hiersche, Martens & Hayward, P.C.*, 948 S.W.2d 317, 321 (Tex. App.—Dallas 1997, writ denied). A trust agreement which states that the interest of a beneficiary shall be held subject to a spendthrift trust is sufficient to create a valid spendthrift trust under Texas law. Tex. Prop. Code § 112.035(a). Spendthrift provisions of trusts are severable and, when defeated, do not destroy the whole trust agreement. *Fewell v. Republic Nat'l Bank of Dallas*, 513 S.W.2d 596, 599 (Tex. Civ. App.—Eastland 1974 writ ref'd n.r.e.).

There are limited circumstances when a sole beneficiary who also serves as a named trustee may be considered to be a settlor, thereby forfeiting any spendthrift protection. This occurs when a trustee-beneficiary has an unlimited "presently exercisable power to . . . distribute property to or for the benefit of the beneficiary . . . ." Tex. Prop. Code § 112.035(f). However, if the trustee-beneficiary's power to distribute property to himself is (1) "exercisable only on

---

[2] Florida courts also recognize the validity of spendthrift trusts so long as the trust agreement does not expressly grant the beneficiary the expressed right to demand distributions from the trust or terminate the trust and acquire its assets. *Miller v. Kresser*, 34 So.3d 172, 175 (Fla. Dist. Ct. App. 2010). Florida's merger doctrine does not appear to have a spendthrift exception, but it does reflect a hesitation to employ the merger doctrine where injustice or frustration of the settlors' intent would result. *Hansen v. Bothe*, 10 So.3d 213, 216 (Fla. Dist. Ct. App. 2009).

consent of another person holding an interest adverse to the beneficiary's interest," or (2) "limited by an ascertainable standard, including health, education, support, or maintenance of the beneficiary," then he may not be considered to be a settlor of the trust merely because he holds the power to distribute trust property to himself. *Id.* If the trustee-beneficiary is not considered a settlor of the trust, the spendthrift protection remains. *Id.*

Texas has enacted a statutory savings provision intended to ensure that a trustee-beneficiary's power is limited by an ascertainable standard. Tex. Prop. Code § 113.029(a). If the trust agreement confers upon a trustee-beneficiary overly-broad discretion, including discretion described as "absolute," "sole," or "uncontrolled," the statute applies to limit the power, making it exercisable only in accordance with an ascertainable standard relating to the trustee-beneficiary's health, education, support, or maintenance within the meaning of sections 2041(b)(1)(A) or 2514(c)(1) of the Internal Revenue Code. *Id.* at § 113.029(b)(1). This savings statute applies unless the terms of the trust agreement expressly override it. *Id.*

The trust agreement governing the Millennium Trusts contains a spendthrift provision. (ECF No. 1114-18 at 21). Dorothy P. Kornman did not retain a beneficial interest in the Millennium Trusts and the trust agreement unambiguously reflects her intent to create spendthrift trusts. (*Id.*). Gary Kornman was designated as both a trustee and the sole beneficiary of the Millennium 2000 common trust. (ECF No. 1114-18 at 4, 11). Because of Gary Kornman's status as a trustee-beneficiary, the Court must consider the extent of his power as trustee to distribute trust property to himself as beneficiary.

The trust agreement indicates that Gary Kornman is the "family trustee." (ECF No. 1114-18 at 11). As family trustee, Gary Kornman is authorized to distribute as much of the trusts' income or principal as is necessary to provide for the beneficiaries needs. (ECF No. 1114-

18 at 4). Needs is defined in the trust agreement as "so much of the trust estate as will provide for that beneficiary's health, support, maintenance, and education in his accustomed manner of living." (ECF No. 1114-18 at 8). Needs is expressly limited in the trust agreement. "In making distributions for the needs of a beneficiary, distributions shall be limited to the ascertainable standard within the meaning of sections 2514(c)(1) and 2041(b)(1)(A) of the [Internal Revenue] Code . . . ." *Id.*

Notwithstanding this limitation, section 7.01 of the trust agreement confers substantial authority to Gary Kornman as family trustee. (ECF NO. 1114-18 at 23). Such authority includes, but is not limited to, the power to invest, sell, lease, loan, borrow, and litigate on behalf of the Millennium Trusts. (*Id.*). Section 7.01 also empowers Gary Kornman "[t]o allocate and distribute different kinds or disproportionate shares of property . . . among the beneficiaries . . . ." (*Id.*). However, the general powers of the family trustee in section 7.01 are "subject to any limitations stated elsewhere herein . . . ."). The power of the family trustee to distribute assets of the trust to the beneficiary *is* limited elsewhere in the trust agreement. As mentioned previously, the family trustee's power to distribute is limited by the needs of the beneficiary. (ECF No. 1114-18 at 4).

Finally, section 7.03 of trust agreement confers upon each of the trustees "absolute discretion." (ECF No. 1114-18 at 31). It states, "[e]ach trustee shall have full and complete discretion in the exercise of the powers given him or her . . . ." (*Id.*). Any power given to Gary Kornman by the trust agreement to distribute trust property to himself is limited by the definition of needs. To the extent this clause is not limited by the definition of needs, the statutory savings provision applies to limit the scope of the trustee-beneficiary's power to distribute trust property to a permissible, ascertainable standard. Tex. Prop. Code § 113.029. The statute specifically

addresses its application to limit the term "absolute" in reference to discretion. *Id.* at § 113.029(a). The trust agreement does not reflect an intent to override the statutory savings provision. *See id.* at § 113.029(b).

The power conferred to Gary Kornman as family trustee under the trust agreement is not so unfettered as to forfeit spendthrift protection. Accordingly, the Millennium Trusts are valid spendthrift trusts under Texas law.

*Merger of Title Did Not Terminate the Millennium 2000 Trust*

Gary Kornman's status as a trustee-beneficiary of the Millennium 2000 Trust does not result in the termination of the trust. Typically, a trust terminates if legal title to the trust property and all equitable interests in the trust become united in an individual. Tex. Prop. Code § 112.034(b). However, in the case of a spendthrift trust, if legal title and all equitable interests in trust property become united in an individual, a court shall appoint a new trustee or co-trustee to administer the trust for the benefit of the beneficiary. *Id.* at § 112.034(c).

When the Millennium Trusts were created, Gary Kornman was not the sole trustee. The trust agreement names Kay Kornman Weinstein the "distribution trustee," and granted her independent and unilateral authority to act on behalf of the beneficiary. (ECF No. 1114-18 at 12). The trust agreement confers upon the distribution trustee the power to distribute trust income and principal to provide for the *best interests* of the beneficiary. (ECF No. 1114-18 at 4). Best interests is defined in the trust agreement very broadly, free of the distribution limitations attendant to the term "needs." (ECF No. 1114-18 at 8). Even if no trustee was appointed after the death of Kay Kornman Weinstein in 2014, the Millennium 2000 Trust does not terminate. Because it is a spendthrift trust, titles do not merge if they become united in an individual.

Instead a court must appoint a new trustee or co-trustee to administer the trust for the benefit of the beneficiary. Tex. Prop. Code § 112.034(c).

Accordingly, the Millennium Trusts were valid spendthrift trusts when created, and remain valid spendthrift trusts under Texas law.

### Reservation

Although the Court holds that the corpus of the Trusts may not be penetrated by Faulkner or Mims, the Court does not rule on whether future distributions, particularly those in excess of Gary Kornman's needs, could be subject to execution to satisfy the judgment.

### Conclusion

The Court will issue an order consistent with this memorandum opinion.

SIGNED **October 23, 2015.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE